Case 6:23-cv-00029-NKM-CKM   Document 1   Filed 05/22/23   Page 1 of 11
Pageid#: 1

CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
5/22/2023
LAURA A. AUSTIN, CLERK
BY: s/ ARLENE LITTLE
     DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF VIRGINIA
(Lynchburg Division)

| | |
|---|---|
| JOSHUA HEAD, | ) |
| *Plaintiff*, | ) |
| v. | ) Civil Case No.: **6:23CV00029** |
| MODINE MANUFACTURING COMPANY, | ) **JURY TRIAL REQUESTED** |
| **SERVE**: R/A: Corporation Service Company<br>100 Shockoe Slip Fl 2<br>Richmond, VA, 23219 - 4100 | ) |
| *Defendant*. | ) |

## COMPLAINT

COMES NOW Plaintiff Joshua Head ("Plaintiff"), through undersigned counsel, and files this Complaint against Defendant Modine Manufacturing Company ("Modine" or "Defendant") for violating the Family and Medical Leave Act, 29 U.S. Code § 2601 et seq. ("FMLA"), by denying Plaintiff's request for FMLA certification on the basis he lacked sufficient months of service because Defendant refused to consider time Plaintiff worked in 2021/2022 prior to a short interruption in employment and terminating Plaintiff for missing work once he exhausted his available non-FMLA leave.

**I.    JURISDICTION AND VENUE**

1. This action arises under the Family and Medical Leave Act, 29 U.S. Code § 2601 et seq. ("FMLA").

2. This Court has subject matter jurisdiction over this action pursuant to 29 U.S. Code § 2617(a), and 28 U.S.C. § 1331.

3. Venue lies in the Western District of Virginia, Lynchburg Division, under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in Rockbridge County, Virginia.

## II.  PARTIES

4. Plaintiff Josh Head is an individual, a United States citizen, and a resident of the Commonwealth of Virginia living in Amherst County, Virginia.

5. At all times relevant herein, Plaintiff worked at Defendant's factory located in Rockbridge County, Virginia.

6. Defendant Modine Manufacturing Company ("Modine") is a corporation formed in the State of Wisconsin.

7. Modine lists its principal office as: 1500 Dekoven Ave., Racine, WI, 53403.

## III.  LEGAL PRINCIPLES:

### A.  The Family and Medical Leave Act, 29 § U.S.C. 2601, et seq. ("FMLA"),

8. Under the Family and Medical Leave Act, 29 § U.S.C. 2601, et seq. ("FMLA"), full-time employees who have worked a year or more for their employer are entitled to a total of 12 workweeks of unpaid leave within a 12-month period, subject to exceptions not relevant here.

9. To satisfy the twelve months of service requirement, employees are permitted to count all time worked for Defendant so long as the break in service is less than seven (7) years. 29 C.F.R. § 825.110(b)(1).

10. Moreover, "[i]f an employee is maintained on the payroll for <u>any part of a week</u>, including any periods of paid or unpaid leave (sick, vacation) during which other benefits or compensation are provided by the employer …, <u>the week counts as a week of employment</u>." 29 C.F.R. § 825.110(b)(3) (emphasis added).

11. "For purposes of determining whether intermittent/occasional/casual employment qualifies as at least 12 months, 52 weeks is deemed to be equal to 12 months." Id.

12. An eligible employee may use this leave for several reasons, including "to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition." 29 U.S. Code § 2612(a)(1)(C).

13. "Serious health condition" for purposes of the FMLA means "an illness, injury, impairment, or physical or mental condition that involves inpatient care in a hospital, hospice, or residential medical care facility; or continuing treatment by a health care provider." 29 USC § 2611(11).

14. Employees may use their 480 hours (12 workweeks) of FMLA leave intermittently and only the hours used each day are subtracted from their available hours of FMLA leave. 29 U.S. Code § 2612(b)(1).

15. Under 29 U.S. Code § 2615(D)(a)(1), an employer may not "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" the FMLA.

16. An employer violates the FMLA when it "discharge[s] or in any other manner discriminate[s] against any individual for opposing any practice made unlawful by this subchapter." 29 U.S. Code § 2615(D)(a)(2).

17. Affected employees are entitled to be reinstated to their previously held position and may recover all lost wages and benefits, plus an equal amount as liquidated damages, plus attorney fees and costs. 29 U.S. Code § 2617.

IV.     **STATEMENT OF FACTS**

18.     On or about July 12, 2021, Plaintiff began working for Defendant at Defendant's factory in Rockbridge County, Virginia.  (See **Exhibit 1**.)[1]

19.     Plaintiff was initially paid $16/hr. but that increased to $20.15 by the time he left a few months later.

20.     On or about February 23, 2022, Plaintiff reluctantly took a short leave of absence to care for his young son who suffers from a life-threatening health condition requiring hospitalization from February 23, 2022 – June 9, 2022, and continuing treatment by a health care provider.

21.     Between July 12, 2021, and February 23, 2022, Plaintiff worked thirty (30) weeks and two (2) days for Defendant.

22.     On or about July 5, 2022, Plaintiff resumed working for Defendant in the same capacity he did prior to his resignation on February 23, 2022.  (See **Exhibit 2**.)

23.     In this capacity, he earned $21.06 initially and $23.41/hr. on the date he was terminated.

24.     Between July 5, 2022, and April 24, 2023, Plaintiff worked forty-one (41) weeks and six (6) days while employed by Defendant.

25.     When combined with Plaintiff's previous term of service between November 1, 2021, and February 23, 2022, this resulted in **a total of seventy-three (73) weeks** that count toward the FMLA's length of service requirement.

26.     In addition, Plaintiff worked more than the minimum 1,250 hours required to trigger protection under the FMLA.

---

[1] Plaintiff initially worked for Defendant via a staffing agency before being hired directly on or about November 1, 2021.

4

27. On or about December 22, 2022, Plaintiff requested intermittent leave to care for his child whose condition had regressed to the point he required a medical procedure at Vanderbilt University in Nashville, TN.

28. This procedure required Plaintiff's son to be hospitalized for several days and confirmed his medical condition would require years (and perhaps a lifetime) of continuing treatment.

29. Plaintiff initially presented this request to his direct supervisor, Jon, who referred him to Defendant's Human Resources Manager, Brent Secrist.

30. Mr. Secrist told Plaintiff he did not qualify for FMLA leave, so he gave Plaintiff leave paperwork and told him to bring it back after getting it signed by Jon and Defendant's Factory Focus Manager, Cindy Forbes.

31. Defendants approved a 2-week leave of absence for Plaintiff to care for his son.

32. Plaintiff participated in a communications meeting in which Plaintiff approached Defendant's Plant Manager, Matt Neibur, to discuss Plaintiff's son and the health conditions he continued to experience.

33. Mr. Neibur told Plaintiff he did not qualify for FMLA, but that he would approve another 2-week leave in advance and leave the dates blank to be filled in when needed.

34. Plaintiff completed the leave of absence request and both Mr. Secrist and Ms. Forbes signed it.

35. In March, Plaintiff's son suffered another setback.

36. In response, Plaintiff requested to use the pre-approved 2-week leave of absence.

37. Plaintiff's Production Supervisor, Jeremy Clark, recognized the leave of absence and told him to take care of his son.

38. On March 13, 2023, Ms. Forbes called Plaintiff and said his request did not meet Modine's requirements (despite having already been signed and approved). As a result, Ms. Forbes told Plaintiff his absences may result in disciplinary points.

39. Ms. Forbes callously asked Plaintiff why his son was not in a hospital if he was actually as sick as Plaintiff stated.

40. Plaintiff explained his son's condition required him to avoid contact with others whenever necessary and his doctors recommended treatment at home whenever possible.

41. In response, Ms. Forbes stated, "I don't need any details."

42. Ms. Forbes stated she was going to have a meeting with Defendant's agents on March 15, 2023, to discuss the issue further.

43. Following the meeting, Ms. Forbes told Plaintiff they would call him to give him their response to his request.

44. Fortunately, Plaintiff's son's condition improved enough he was able to return to work sooner than expected.

45. On March 20, 2023, Plaintiff arrived at work to complete his regularly scheduled shift.

46. Plaintiff's supervisor, Mr. Clark, told Plaintiff the factory was shut down that week in order to take inventory, but told Plaintiff to work four hours and take the rest of the week off.

47. Plaintiff worked the four hours his supervisor ordered him to work and took the rest of the week off.

48. On or about March 28, 2023, Plaintiff returned to work.

49. Mr. Clark told Plaintiff Ms. Forbes and Mr. Secrist needed to meet with him.

6

50. During the meeting, Ms. Forbes told Plaintiff he did not qualify for FMLA leave unless he had 12 <u>consecutive</u> months of service.

51. She also told Plaintiff his previously-approved absence did not meet company requirements and that it could only be exercised in situations where Plaintiff's son is actually hospitalized.

52. In response, Plaintiff asked Mr. Secrist and Ms. Forbes to provide him a copy of the signed and approved leave of absence request.

53. Mr. Secrist and Ms. Forbes refused to provide the form to Plaintiff.

54. Ms. Forbes told Plaintiff that Plaintiff's wife was his son's "primary caretaker," so he Plaintiff could not take off work even if his son really was sick.

55. On March 28, 2023, Plaintiff again requested FMLA leave while speaking to Mr. Secrist.

56. Despite previously denying Plaintiff's request, Mr. Secrist changed course and told Plaintiff Modine submitted all FMLA requests to Lincoln Financial Group ("Lincoln") for processing.

57. That evening, Plaintiff submitted an FMLA request (**Exhibit 3**) to Defendant's agent, Lincoln.  After submitting the request, Plaintiff spoke with a Lincoln representative who confirmed nearly everything Defendant's agents had told him about the FMLA was wrong.

58. On or about April 3, 2023, Lincoln sent Plaintiff a letter rejecting his request for FMLA certification (**Exhibit 4**).

59. Lincoln's claim processor, Joanna Elmore, cited as the basis for its denial that Plaintiff failed to meet FMLA's length of service requirement.  (See **Exhibit** <u>id.</u>)

7

60. Between the date he became FMLA-eligible and April 20, 2023, Plaintiff was forced to miss several additional days, depleting his bank of available vacation time.

61. On April 20, 2023, Plaintiff sent an e-mail (**Exhibit 5**) to Lincoln's "leave team" stating he had been wrongfully denied FMLA because of failure to include the period he worked between "11/01/2021 and 2/23/2022." Plaintiff cited the Leave ID# assigned to his request and asked the Leave Team, "Please advise."

62. On or about April 21, 2023, Plaintiff's partner, Stephanie Porfert, called Lincoln's agent, Ms. Elmore, to remind her of Plaintiff's previous service between November 1, 2021, and February 23, 2022, that had to be included in calculating Plaintiff's "length of service."

63. On April 22, 2023, Ms. Porfert sent Lincoln's "leave team" an identical copy (**Exhibit 6**) of the e-mail Plaintiff had sent them two days before.

64. On April 24, 2023, Ms. Elmore sent Plaintiff an e-mail response thanking him for sending the April 22, 2023, e-mail but confirming "the date Modine is reporting for date of hire is 07/05/2022, which is reporting 9 months in service with your employer. The FMLA benefit has an eligibility requirement of 12 months and 1250 hours worked so it is denying based on service months." (Emphasis added.)

65. On April 25, 2023, Plaintiff showed up at 4:45AM to work his regular shift at 5AM.

66. Plaintiff's access card no longer worked and he was not able to enter the building.

67. Later that day, Mr. Secrist notified Plaintiff by phone that he had been terminated due to violating Defendant's attendance policy.

68. Plaintiff reminded Mr. Secrist Plaintiff had sought unpaid medical leave under the FMLA, but Mr. Secrist stated Plaintiff had been properly denied because he had not worked a "full year of employment."

8

69. Mr. Secrist told Plaintiff his medical insurance would end at 11:59PM that night.

70. Contrary to that assertion, Defendant <u>actually</u> terminated Plaintiff's health insurance four days earlier on April 21, 2023.

71. Between April 21, 2023, and the present, Plaintiff has incurred approximately $15,000 in medical bills the insurance policy he had as an employee of Defendant would have paid but for his unlawful termination. These bills are expected to continue to accrue at the rate of approximately $30,000 per month until Plaintiff's medical insurance is reinstated. Worse yet, several providers have cancelled appointments for treating Plaintiff's son because he is no longer insured.

72. In addition, Plaintiff has lost approximately $1,650 in wages and benefits he would have received but for Defendant's denial of his rights under the FMLA. These lost wages and benefits will continue to accrue at a rate of approximately $800 per week until he is reinstated.

V.   **CAUSES OF ACTION**

**COUNT I**
**Family and Medical Leave Act, 29 § U.S.C. 2601, et seq. ("FMLA")**

73. Plaintiff re-alleges and incorporates by reference paragraphs 1-72 as if fully set forth in this Count I.

74. Plaintiff satisfied the two requirements for coverage under the FMLA: 1) he worked at least twelve (12) months for Defendant within the past seven (7) years; and 2) he worked at least 1,250 hours for Defendant within the previous twelve (12) months.

75. Because Plaintiff met these requirements, Plaintiff was entitled to 480 hours of unpaid medical leave under the FMLA.

76. Plaintiff requested FMLA leave for an FMLA-qualifying purpose: to care for his son who was experiencing a serious health condition as that term is defined under the FMLA.

77. Defendant wrongfully interfered with Plaintiff's attempt to exercise this right under the FMLA by denying this request.

78. The reason given for this denial (failure to meet the 12 months of service requirement) was invalid. Defendant failed or refused to consider the months of service Plaintiff served prior to his short leave of absence in 2022.

79. Even when Plaintiff reminded Defendant and its agents of this prior term of service, Defendant continued to deny his eligibility under the FMLA.

80. As a direct and proximate result of Defendant's interference with Plaintiff's attempt to exercise this right under the FMLA, Plaintiff exhausted his other forms of available leave on or about April 20, 2023, rendering his absence on April 21, 2023, "unapproved."

81. Defendant terminated Plaintiff on April 24, 2023, citing an accumulation of disciplinary points resulting from "violations" of Defendant's attendance policy.

82. These absences would not have resulted in disciplinary points if Defendant had approved Plaintiff's request for FMLA leave.

83. As a result of Defendant's violations of the FMLA, Plaintiff is entitled to be reinstated to his previously held position in addition to all lost wages and benefits (including medical bills his insurance policy would have paid but for his termination), an equal amount as liquidated damages, plus attorney fees and costs.

## VI. PRAYER FOR RELIEF

**WHEREFORE**, Joshua Head requests judgment against Defendant and moves this Court for an Order:

A. Declaring Defendant violated the FMLA by interfering with Plaintiff's attempt to exercise rights under the FMLA;

B. Awarding Plaintiff compensatory damages for all lost wages in the amount to be determined once Plaintiff is reinstated and an additional amount in liquidated damages for Defendant's violations of the FMLA, plus pre-judgment interest, costs, and attorney fees;

C. Awarding Plaintiff compensatory damages for all medical bills he incurs that the insurance plan he had as an employee of Defendant would have paid had Defendant approved his FMLA leave request and an additional amount in liquidated damages for Defendant's violations of the FMLA, plus pre-judgment interest, costs, and attorney fees;

D. Ordering Defendant to reinstate Plaintiff to his previous position at Modine or pay him an appropriate amount of front pay in lieu of reinstatement; and

E. Providing such other and further relief as this Court may deem necessary, just, and proper.

**<u>JURY TRIAL DEMANDED ON ALL ISSUES SO TRIABLE</u>**

Respectfully Submitted,

JOSHUA HEAD

By: **_/s/ Christopher E. Collins_**
*Counsel for Plaintiff*

Christopher E. Collins (VSB No. 90632)
Mia Yugo (VSB No. 92975)
**Yugo Collins, PLLC**
25 Franklin Road, SW
Roanoke, Virginia 24011
Tel: (540) 861-1529
Direct: (540) 855-4791
chris@yugocollins.com
mia@yugocollins.com

*Counsel for Plaintiff*